Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000446
08-FEB-2017
07:57 AM

NO. CAAP-16-0000446

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE INTEREST OF IL

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 14-00102)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, and Leonard and Reifurth, JJ.)

Appellants Father and Mother appeal separately from the Decision and Order, filed on May 26, 2016 in the Family Court of the First Circuit ("Family Court"),[1] which terminated Father's and Mother's parental rights to their child, IL.

On appeal, both Father and Mother contend that he/she was not given a reasonable opportunity to reunify with IL; that there was not clear and convincing evidence that he/she could not provide a safe family home within a reasonable period of time, even with the assistance of a service plan; and that it was reasonably foreseeable that he/she would become willing and able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years from the child's date of entry into foster care. Specifically, Father contests findings of fact ("FOF") 74, 75, 83, and 85, and conclusions of law ("COL") 11-14, and Mother objects to FOF 70-72, 83, and 84.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Father's and Mother's points of error as follows:

---

[1] The Honorable Bode A. Uale presided.

"[T]he family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." *Fisher v. Fisher*, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006) (quoting *In re Doe*, 95 Hawai'i 183, 189, 20 P.3d 616, 622 (2001)). The Family Court's FOF are reviewed on appeal under the "clearly erroneous" standard, while its COL are reviewed de novo, under the right/wrong standard. *Id.* (quoting *Doe*, 95 Hawai' at 190, 20 P.3d at 623). "Moreover, the family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal." *Id.* (quoting *Doe*, 95 Hawai' at 190, 20 P.3d at 623).

I.  Father's willingness and ability to provide a safe family home.

There was clear and convincing evidence that Father was not willing and able to provide a safe family home, even with the assistance of a service plan, and that it was not reasonably foreseeable that Father would be able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years from the date IL entered foster custody.

While at the hospital at the time of IL's birth, Father and Mother were involved in two altercations that resulted in Father being warned that he would be barred from the hospital room if another altercation occurred. Furthermore, according to Mother, Father had an extensive history of violence toward her. The alleged violence served as the basis for a temporary restraining order ("TRO") that Mother sought against Father on December 11, 2014. In her application for the TRO, Mother stated that on December 8, 2014 Father admitted that he was going to try to kill Mother and then kill himself; on November 8, 2014, Father appeared at the Women's Institute for Human Services Shelter, threatened Mother, and chased her around a gas station next door; on November 7, 2014 Father punched Mother's jaw hard twice at a bus stop in front of others; on November 1, 2014 Father pulled Mother's hair and threw her to the ground, kicked her while she

2

was on the ground, and pinched Mother's bleeding lips shut when she screamed for help; on September 15, 2014 Father pulled Mother out of a truck by her hair, threw her onto the street, punched her nose causing it to bleed, and kicked and slapped her until another motorist stopped nearby; on September 6, 2014, Father beat Mother in their bedroom; and on June 13, 2014, Father pulled Mother's hair and was yelling at her.

Father told the Department of Human Services ("DHS") that he drank alcohol five times per year and used marijuana three times a week. In July 2014 Father was ordered to follow the May 16, 2014 service plan that required him to complete substance abuse assessment and recommended treatment, participate in random drug screenings, complete home-based parenting education, and submit to a psychological evaluation and recommended treatment after 90 days of sobriety.

DHS reported that Father was terminated from his job after testing positive for crystal methamphetamine, and as of December 2014, had failed to engage in any of the services described in the May 16, 2014 service plan. Father failed to appear at a January 8, 2015 periodic review hearing and default judgment was entered against him. In May 2015, DHS reported Father's continued failure to participate in any services or a psychological evaluation. Father testified that he voluntarily moved out of the State in May 2015. He also stated that a DHS social worker gave him a list of services from the service plan to do on the mainland because DHS does not provide support there.

By May 2016, Father stated that he had completed drug treatment and counseling in March 2016, was looking into parenting and domestic violence classes, but that parenting classes would take an additional six months. Father, however, did not present a certificate of completion of the substance abuse class.

Lei Ayat-Verdadero, a DHS social worker, stated that she was still concerned about domestic abuse in the family because Mother had moved to the mainland to live with Father. Ms. Ayat-Verdadero said that she believed that the domestic violence issue could not be resolved within the next six months

because the issue had not been addressed in two years. Ms. Ayat-Verdadero testified that Father failed to demonstrate that he could provide a safe family home after failing to engage in recommended services while in Hawaiʻi, voluntarily moving out of the state where services were not supported by DHS, and acknowledging that he had yet to complete parenting and domestic violence classes. Father was not currently able to provide a safe home given his past history of violence with Mother and his continued relationship with Mother without addressing any domestic violence issues for over two years, even with the assistance of a service plan. Further, she testified that Father was also not able to provide a safe family home in the foreseeable future, even with the assistance of a service plan, not to exceed two years from April 29, 2014, when IL entered foster care.

Father claims that DHS made no effort to facilitate his visit or contact with IL. Therefore, he contends, DHS failed to provide an adequate opportunity to reunify with IL. Contrary to Father's claim, he was provided with a reasonable opportunity to reunify with IL. Father was initially provided with a service plan no later than July 2014. By December 2014, Father had failed to contact DHS to arrange any Ohana Time visits with IL. In May 2015, DHS reported that they had scheduled two visits for Father and had made multiple appointments to meet with him, but he failed to appear at any and had yet to contact DHS to arrange a visit. In August 2015, DHS moved to terminate Father's parental rights. Father failed to visit IL prior to the hearing to terminate his parental rights in May 2016. Father failed to engage in any of the services recommended by DHS for reunification while he was in Hawaiʻi. Father also failed to complete all of the recommended services for reunification after he moved to the mainland.

II. Mother's willingness and ability to provide a safe family home

There was clear and convincing evidence that Mother was not willing and able to provide a safe family home, even with the assistance of a service plan, and that it was not reasonably

4

foreseeable that Mother would be able to provide a safe family home, even with the assistance of a service plan, within a reasonable period of time, not to exceed two years from the date IL entered foster custody on April 29, 2014.

Mother tested positive for methamphetamine when giving birth to IL. In a May 16, 2014 Safe Family Home Report, Mother stated that she drank alcohol once or twice a week and used methamphetamine once a month. In May 2014 Mother was ordered to follow a service plan that required her to complete substance abuse assessment and recommended treatment, participate in random drug screening, complete home-based parenting education, and submit to a psychological evaluation and recommended treatment after 90 days of sobriety.

In an effort to reunify Mother and IL, Mother agreed that if she was given custody of IL, she would participate in the Women's Way treatment program. Pursuit of the TRO against Father was a condition of Mother's participation in the program. In May 2015, however, Mother failed to appear for a hearing on the TRO against Father despite being informed about it by the Women's Way staff. DHS then reassumed foster custody of IL.

Contrary to Mother's assertion that removal of IL from her custody after failure to pursue the TRO constituted an inadequate opportunity to reunify with IL, DHS was justified in reassuming foster custody given Mother's failure to demonstrate that she was willing to provide a safe family home that prohibited contact with Father, a person that had beaten her to the point where she required treatment at a hospital. In addition, Mother stated that she still wanted Father in her life despite the fact that Father did not participate in services.

Although domestic violence classes were not recommended for Mother until January 2016, Mother initially attended two different domestic violence services. However, Mother did not want to attend a domestic violence class in Waipahu and stopped attending classes in Waianae after she voluntarily relocated to the mainland to live with Father. At the time that Mother's parental rights were terminated in May 2016, she still had not completed domestic violence classes on the mainland, and

requested more time to complete them. Mother was unwilling and unable to provide a safe family home for IL, even with the assistance of a service plan, because she refused to exclude a person from her home that had beat her. It was not reasonably foreseeable that Mother would become willing and able to provide a safe family home, even with the assistance of a service plan, not to exceed two years from April 29, 2014, the date IL entered foster custody. Mother voluntarily moved to the mainland to live with Father although family violence issues between Mother and Father had not been resolved and would not be resolved within two years after entry of IL into foster care.

## III. Conclusion

In light of the evidence presented and the standards of review that we must apply in evaluating the Family Court's decision, there was clear and convincing evidence that neither Father nor Mother was willing and able to provide a safe family home, even with the assistance of a service plan, and that it was not reasonably foreseeable that Father or Mother would be able to do so within two years from the date that IL entered foster custody. Consequently, Father's challenges to FOF 74, 75, 83 and 85, and COL 11-14, and Mother's objections to FOF 70-72, 83, and 84 are without merit.

Therefore, IT IS HEREBY ORDERED that the May 26, 2016 Decision and Order, and the subsequent June 6, 2016 Order Terminating Parental Rights, filed in the Family Court of the First Circuit, are affirmed.

DATED: Honolulu, Hawai'i, February 8, 2017.

On the briefs:

Herbert Y. Hamada
for Mother-Appellant.

Tae Chin Kim
for Father-Appellant.

Julio C. Herrera,
Jay K. Goss, and
Eric J. Alabanza,
Deputy Attorneys General,
for Petitioner-Appellee.

Presiding Judge

Associate Judge

Associate Judge

6